Rivera Pérez, Juez Ponente
*859 TEXTO COMPLETO DE LA SENTENCIA
Mediante el presente recurso se solicita de esta Curia la revocación de una sentencia sumaria emitida por el Tribunal de Primera Instancia, Sala Superior de Arecibo, el 29 de mayo de 1998, notificada y archivada en autos copia de la misma el 9 de junio de 1998. En el referido dictamen, el Tribunal desestimó una demanda sobre retracto legal presentada por la parte demandante, aquí apelante, por el fundamento de caducidad. No estando conforme con la anterior decisión dicha parte acude ante nos. Se revoca la sentencia apelada y se devuelve el caso al Tribunal de Primera Instancia para que celebre vista evidenciaría, a los fines de determinar el momento en que la parte aquí apelante advino en completo conocimiento de los detalles de la compraventa que pretende retraer y, conforme a ello, adjudique si la demanda de epígrafe fue oportunamente presentada, o si, por el contrario, el término para la misma caducó.
I
Según surge de nuestro expediente del caso de autos, mediante la escritura número 34, otorgada ante el notario público, licenciado Armindo. Colón Vargas, el 15 de septiembre de 1993, la parte demandante adquirió de varios miembros de la sucesión Martínez Lourido una cuota indivisa de una finca rústica, sita en el Municipio de Barceloneta. Posteriormente, mediante escritura número 35 de 23 de' diciembre de 1997, otorgada ante el mismo notario público, otros miembros de la sucesión Martínez Lourido vendieron sus respectivas participaciones indivisas en la referida finca a la parte demandada, aquí apelada, Berrios Development Corporation.
El 11 de febrero de 1998, la parte demandante, aquí apelante, presentó una acción de retracto legal ante el Tribunal de Primera Instancia, Sala Superior de Arecibo. En la misma se alegó: (a) que durante el mes de enero de 1998 había advenido en conocimiento de que se había vendido, o se pretendía vender, ciertas participaciones de la finca en cuestión; (b) que mediante carta fechada 20 de enero de 1998, los aquí apelantes solicitaron información del notario público, licenciado Armindo Colón Vargas, sobre si en efecto se había efectuado la compraventa sospechada, y de ser la contestación en la afirmativa, enviara copia de la escritura pública otorgada a dichos fines, así como los detalles pertinentes, de forma que éstos pudieran determinar si ejercían su derecho de retracto; (c) que el 26 de enero de 1998, la parte aquí apelante recibió, a través de su representante legal, copia de la escritura número 35 de 23 de diciembre de 1997, otorgada ante el notario público, licenciado Armindo Colón Vargas, de la cual surgía que mediante la misma se trasladó el dominio de varias cuotas indivisas a la parte demandada, aquí apelada, por el precio de doscientos cuarenta mil dólares ($240,000), del cual se pagó en el momento del acto del otorgamiento de la escritura la cantidad de ciento veinte mil dólares ($120,000), y los restantes ciento veinte mil dólares ($120,000) en seis (6) pagarés personales, de veinte mil dólares ($20,000) cada uno, "cuyas cláusulas y condiciones se expresan en los mismos" y (d) que mediante dos llamadas telefónicas habidas los días 2 y 3 de febrero entre el referido notario público otorgante y el representante legal de los aquí apelantes, éstos advinieron en conocimiento de la totalidad de los detalles de las "cláusulas y condiciones" de los mencionados pagarés, a saber, que los pagarés tenían un término de un año cada uno, para los cuales no se habían pactado intereses, excepto en caso de mora, que se pagaría un ocho por ciento (8%) de interés.
La parte aquí apelante acompañó su demanda con un cheque por la cantidad de ciento veintitrés mil seiscientos ochentiseis dólares ($123,686), para ser consignados en Tribunal de Primera Instancia. En su demanda, dicha parte se comprometió, además: (a) a asumir el pago de los seis (6) pagarés que constituyen el remanente del precio de venta; (b) a prestar una fianza para garantizar los mismos, de ser ello necesario; y (c) a no enajenar la porción que se pretende retraer durante el período de cuatro *860 (4) años.
Así las cosas, la parte demandada, aquí apelada, presentó ante el Tribunal de Primera Instancia una moción solicitando desestimación de la demanda y/o sentencia sumaria por el fundamento de caducidad. Adujo la parte aquí apelada ante dicho Tribunal, que habiendo sido presentada copia certificada de la escritura pública de compraventa en cuestión en el Registro de la Propiedad el 7 de enero de 1998, y conociendo la parte aquí apelante sobre la compraventa, según ésta misma admitió en su demanda ante el tribunal a quo, desde el 26 de enero de 1998, el término de nueve (9) días para ejercer el derecho de retracto de comunero, según prescrito por el Artículo 1414 del Código Civil, había caducado, debido a que la demanda para reclamar tal derecho había sido presentada el 11 de febrero de 1998. La referida moción fue acompañada con una copia de la Minuta del Asiento de Presentación de la copia certificada de la escritura pública en cuestión en el Registro de la Propiedad. 
Luego de que la parte aquí apelante presentara su "Oposición a Moción Solicitando Desestimación por Caducidad y/o Sentencia Sumaria", el 29 de mayo de 1998, el Tribunal de Primera Instancia, Sala Superior de Arecibo, dictó sentencia sumaria desestimando la causa de acción de epígrafe por el fundamento de caducidad. 
Inconforme con el anterior dictamen, la parte demandante, aquí apelante, acude ante nos señalando como errores cometidos por el foro sentenciador los siguientes:
"A. Erró el Tribunal de Primera Instancia al disponer que el Artículo 53 de la Ley Hipotecaria aplica al derecho para ejercer una acción de retracto legal sea ésta de comunero o de coheredero.
B. Erró el Tribunal de Primera Instancia al disponer que el presente caso se trata de una acción de retracto legal de un comunero en lugar de un coheredero."
II
En el campo del derecho se denomina como la figura de retracto, al derecho real de adquisición preferente, en virtud del cual una persona posee la prerrogativa de subrogarse en el lugar del comprador o adquirente de determinado bien, siempre y cuando se cumpla con los requisitos que para ello prescribe el ordenamiento jurídico. El Artículo 1412 del Código Civil, es la fuente legal que provee sobre el derecho de retracto legal de comuneros. El mismo prescribe, en parte, lo siguiente:

"El co-propietario de una cosa común podrá usar del retracto en el caso de enajenarse a un extraño la parte de todos los demás condueños o alguno de ellos."

En cuanto al término para ejercitar el derecho de retracto, dispone el Artículo 1414 del Código Civil, supra:

"No podrá ejercitarse el derecho de retracto legal sino dentro de nueve (9) días contados desde la inscripción en el registro, y en su defecto, desde que el retrayente hubiera tenido conocimiento de la venta."

El derecho de retracto persigue la extinción de la comunidad, o al menos la reducción del número de condominos, disminuyendo la pluralidad de derechos sobre un mismo inmueble. No obstante, debido a que el derecho de retracto de comuneros autorizado por el Artículo 1412 del Código Civil, es en sí mismo contrario al principio de la libre contratación, las condiciones requeridas para su ejercicio deben cumplirse estrictamente. Para que pueda tener éxito una demanda de retracto de comuneros deben coexistir los siguientes requisitos: (a) que exista una comunidad de bienes; (b) que la acción se inste por un co-propietario; (c) que se trate de una enajenación de parte de la cosa común a favor de un extraño a la comunidad; (d) se trate de una enajenación de parte de la cosa común a favor de un extraño a la comunidad; (e) se presente la causa de acción correspondiente dentro del término de nueve (9) días, contados a partir de la fecha en que se practique la inscripción en el Registro de la Propiedad (no desde la fecha del asiento de presentación), o desde que el retrayente hubiere tenido conocimiento del otorgamiento de la venta; (f) que el demandante consigne con su *861 demanda en el Tribunal de Primera Instancia el precio real de la enajenación, los gastos del contrato, cualquier otro pago legítimo hecho para la enajenación y los gastos necesarios y útiles hechos en la cosa enajenada; y (g) que el retrayente se comprometa a no vender la participación dominical que retraiga durante cuatro (4) años, 
En el caso de autos, el Tribunal de Primera Instancia, al interpretar el Artículo 1414 del Código Civil, supra, concluyó que el mismo establecía en primera instancia como dies ad quo, o punto de partida para el cómputo del referido plazo de nueve (9) días, la fecha de la inscripción del negocio jurídico en el Registro y que sólo en la situación de que la venta no fuera inscrita en el Registro de la Propiedad era que procedía el cómputo del término en cuestión a partir del momento en que el retrayente tuvo conocimiento de la venta. Continuó razonando el foro sentenciador, que debido a que el Artículo 53 de la Ley Hipotecaria prescribe para que los títulos inscritos en el Registro de la Propiedad surtan efecto contra terceros desde la fecha de presentación de los mismos para inscripción, entonces en el caso de autos, debía entenderse que el término de nueve (9) días para que el aquí apelante ejercitara su retracto había comenzado a decursar desde el 11 de enero de 1998, fecha en que la escritura de compraventa había sido presentada para inscripción en el Registro de la Propiedad. Fue partiendo de dichas premisas equivocadas que el Tribunal de Primera Instancia resolvió que la causa de acción de epígrafe había caducado, independientemente de si al mismo le era aplicable el término de nueve (9) días de retracto de comuneros, o el de treinta (30) días de coherederos. 
Para dilucidar la controversia medular que el caso de autos presenta, a saber, si la causa de acción de epígrafe se encuentra caduca, es esencial que primeramente delimitemos el tipo de derecho de retracto aplicable al caso de autos, ya que de ello depende el término que poseía la parte aquí apelante para ejercer tal derecho. Como mencionáramos anteriormente, en el presente litigio la parte aquí apelante posee varias cuotas pro indiviso en un inmueble, las cuales fueron adquiridas de ciertos miembros de una sucesión. El pleito tiene su génesis en la posterior enajenación de cuotas pro indiviso que efectuaran otros miembros de la referida sucesión a la parte aquí apelada. Evaluados los anteriores hechos, resulta meridianamente claro que el caso de autos contempla una relación del disfrute del “derecho de retracto legal entre comuneros. Así fue resuelto por nuestro Tribunal Supremo, hace varias décadas en Fuertes v. Arzón Méndez, al expresar que el comprador de una participación en común pro indiviso de una sucesión, si bien es un extraño a la comunidad hereditaria al momento de adquirir dicha cuota, una vez perfeccionada su adquisición, éste viene a formar parte de la misma en calidad de co-propietario, no de coheredero, pudiendo retraer en dicho concepto, aquellas enajenaciones que posteriormente los restantes miembros de la sucesión realicen a personas extrañas a la comunidad.
Establecido lo anterior, resulta necesario evaluar el momento a partir del cual comienza a decursar el término para que proceda una acción de retracto de comuneros. Según expusimos previamente, el Artículo 1414 del Código Civil, supra, postula que el término será de nueve (9) días, contados "desde la inscripción en el registro, y en su defecto, desde que el retrayente hubiera tenido conocimiento de la venta". No obstante, somos de la opinión que dicho estatuto no puede ser interpretado tomando como punto de partida para el cómputo del mencionado término el momento en que el retrayente advino en conocimiento de la venta, sólo cuando se trate de enajenación que no ha sido inscrita. Indican, en pertinente, los tratadistas Manuel Albaladejo y Silvia Díaz Alabart:

"Si la transmisión se inscribió en el Registro, la ley presume que [el retrayente] pudo conocerla, por lo cual el plazo de ejercicio comienza a correr a partir de ésta, [citas omitidas] Pero esto último no significa que si el retrayente tuvo el debido conocimiento de la transmisión antes de la inscripción, se abra de nuevo el plazo de ejercicio". 

Refiriéndose al Tribunal Supremo de España, y su interpretación respecto al Artículo 1524 del Código Civil Español, equivalente al Artículo 1414 nuestro, señalan dichos tratadistas:
"... el Tribunal Supremo se ha visto obligado a dar una interpretación correctora del precepto que aquí comento, y así ha declarado que el cómputo a partir del de la inscripción registral sólo juega cuando no consta que el conocimiento de la enajenación date de anterior fecha...". 
Señala, por su parte, el tratadista José Puig Brutau:
*862 "... los puntos de partida pueden ser dos, "nueve días contados desde la inscripción en el Registro", o bien nueve días "desde que el retrayente hubiera tenido conocimiento de la venta".
Ha de tenerse en cuenta que no sólo es eficaz el conocimiento de la enajenación en el caso de no haberse inscrito en el Registro, como podría resultar de una interpretación literal del Artículo 1524, sino que la doctrina del Tribunal Supremo considera a dicho conocimiento como el punto de partida del plazo de caducidad del retracto cuando se ha tenido antes de haberse practicado dicha inscripción.
"... el cómputo a partir de la inscripción sólo juega cuando no consta que el conocimiento de la enajenación data de fecha anterior...". 
De igual forma, es imperativo precisar el alcance que debe otorgarse a la letra del Artículo 1414 del Código Civil, supra, el cual expresa como punto de partida para computar el término allí dispuesto, aquél en que el "el retrayente hubiera tenido conocimiento de la venta". Dicho momento debe entenderse no como aquél en que el retrayente adviene en llano conocimiento de que se ha efectuado y consumado la enajenación en cuestión, sino que conozca de todos aquellos detalles respecto a dicho negocio jurídico, como sean necesarios para que éste pueda tener los elementos de juicio suficientes para decidir inteligentemente si se subroga en el lugar del adquirente, sujeto a todos los términos y condiciones a los que éste quedó obligado.
Indica el tratadista español, José Puig Brutau, en cuanto al asunto, lo siguiente:
"... no basta tener conocimiento del hecho de que la enajenación ha sido efectuada, pues si el retrayente ha de subrogarse en las mismas condiciones estipuladas en el contrato, es preciso que las conozca exactamente para que el ejercicio del derecho responda a un juicio exacto sobre su conveniencia. Así lo ha reconocido reiteradamente la jurisprudencia." 
De igual forma se expresan los tratadistas Manuel Albaladejo y Silvia Díaz Alabart, al señalar que:
"... hay que entender que el plazo de ejercicio comienza a correr desde que el retrayente tiene conocimiento de la transmisión. El conocimiento ha de ser completo, cumplido o cabal, abarcando una noticia exacta de todos los extremos de aquélla, no bastando ciertas referencias de la transmisión o datos incompletos de sus condiciones". 
Ya en Quiñones v. Quiñones, nuestro más Alto Foro utilizó la anterior norma interpretativa para pautar el dies ad quo del discutido plazo de nueve (9) días, prescrito por el Artículo 1414 del Código Civil, supra. Dicho razonamiento se expresó en Quiñones, supra, de la siguiente forma:

"Realmente el término empezó a contarse desde el día 11 de junio en que el retrayente José Ramón Quiñones estuvo en la oficina del notario Suau y allí leyó la escritura de venta y obtuvo completo y exacto conocimiento de los términos y condiciones de la misma que le ponían en condiciones de decidir la conveniencia de ejercitar o no la acción del retracto legal."

Si bien en el caso de autos podría precisarse que el 26 de enero de 1998 fue la fecha en que el retrayente conoció el contenido de la escritura pública de compraventa en cuestión, examinada la misma, concluimos que tal fecha no puede ser tomada como aquélla en la que la parte aquí apelante obtuvo total y completo conocimiento de los detalles del negocio jurídico habido. Ello, debido a que en la referida escritura pública no se expresan las cláusulas y condiciones que fueron acordadas por las partes, en lo referente a los pagarés emitidos por la parte adquirente, aquí apelada, correspondientes al precio aplazado allí pactado.
No podemos perder de vista, que el caso de autos fue resuelto por el Tribunal de Primera Instancia mediante el procedimiento de sentencia sumaria. Hemos examinado la totalidad de nuestro expediente y somos de la opinión que en el mismo no existe base suficiente en la cual un tribunal pueda apoyarse, a los fines de precisar el momento en que la parte aquí apelante advino en conocimiento completo de *863 los detalles de la compraventa en cuestión y, por ende, que se encontrara en posición de decidir si ejercía su derecho de retracto, subrogándose en el lugar de los aquí apelados.
Como es bien sabido, el propósito primordial de nuestro sistema de derecho es la solución justa, rápida y económica de los procedimientos judiciales. Uno de los mecanismos procesales que promueve la disposición de los pleitos de esta forma es la sentencia sumaria, procedimiento regulado por la Regla 36 de las de Procedimiento Civil, supra, el cual permite que se dicte sentencia sin celebrar una vista en los méritos.
Según prescribe la Regla 36.3 de las de Procedimiento Civil, procede dictarse sentencia sumariamente cuando:

"...las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en union a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente."

En cuanto a la sentencia sumaria como remedio, nuestro más Alto Foro ha señalado:

"La sentencia sumaria es remedio extraordinario que sólo debe ser concedido cuando el promovente. ha establecido su derecho con claridad y ha quedado demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de las alegaciones que no hayan sido refutadas por la evidencia presentada con la moción. La sentencia sumaria sólo debe dictar se en casos claros, cuando el Tribunal tenga ante sí la verdad sobre todos los hechos pertinentes." 

No obstante, al resolver una moción de sentencia sumaria las cortes deben actuar siempre con cautela. Ante la presentación de una moción solicitando que se dicte sentencia sumaria, un tribunal no podrá juzgar cuestiones de hecho, ya que su autoridad se circunscribe a determinar si hay cuestiones que deben dilucidarse en un juicio plenario. 
En vista de lo antes reseñado, nos vemos obligados a devolver el caso al Tribunal de Primera Instancia para que éste celebre una vista evidenciara que lo coloque en posición de determinar si la causa de acción de epígrafe fue oportunamente presentada, conforme a lo aquí pautado.
III
Por los fundamentos que anteceden, se revoca la sentencia apelada y se devuelve el caso al Tribunal de Primera Instancia para que celebre vista evidenciara, a los fines de estar en posición de determinar en qué momento la parte aquí apelante tuvo conocimiento completo y suficiente de los detalles de la compraventa del inmueble objeto del presente litigio y, conforme a ello, adjudique si la demanda incoada fue oportunamente presentada, o si por el contrario el término para ejercitar dicha causa de acción había caducado.
Lo acordó y manda el Tribunal y lo certifica la señora Sceretaria General.
Aida Ileana Oquendo Graulau
Secretaria General